STATE ex rel. STATE HIGHWAY
COMMISSION of Missouri,
Plaintiff-Respondent,

v.

THELNOR, INC., et al., on exceptions of
Leah Obin, et al., Defendants,

Southern Commercial & Savings Bank,
Defendant-Appellant.

No. 36691.

Missouri Court of Appeals,
St. Louis District,
Division Two.

July 27, 1976.

Motion for Rehearing and for Transfer to
Supreme Court Denied Nov. 12, 1976.

Application to Transfer Denied
Dec. 13, 1976.

Greensfelder, Hemker, Wiese, Gale & Chappelow, John J. Bahnak, Jr., St. Louis, for defendant-appellant.

Donald L. Spry, St. Louis, Bruce A. Ring, Chief Counsel, Jefferson City, for plaintiff-respondent.

DOWD, Judge.

In this second appeal arising out of condemnation proceedings, defendant-Southern Commercial Bank (formerly Southern Commercial and Savings Bank) challenges a summary judgment rendered against it. Because the facts in this matter are complicated and crucial to our ruling, we state them in some detail.

On November 14, 1964, pursuant to condemnation proceedings initiated by the State Highway Commission, the circuit court condemned certain property located along Lindbergh Boulevard. The court appointed commissioners to prepare a report and make an award for the taking.

The property in question was owned by R. W. Stuckenberg Real Estate Co. (hereinafter referred to as Stuckenberg) and was encumbered by a deed of trust held by Southern Commercial and Savings Bank (hereinafter referred to as Southern) as assignee of Dorothy Durning. The deed of trust provided: "Any amounts awarded in condemnation proceedings or taking the property herein described or any part thereof, shall be paid to [Dorothy Durning], to be applied on the indebtedness hereby secured." The encumbrance on the property secured a loan made to Hazel Morin. As of November 14, 1964, both Stuckenberg and Southern were defendants in the condemnation proceeding.

The commissioners' report, filed January 4, 1965, found that the value of property taken by the condemnor was $14,500.00. Both the State Highway Commission and Stuckenberg excepted to the award later in January.

On January 14, 1965, the State Highway Commission deposited $14,500.00 in the court registry. The lower court conducted an *ex parte* proceeding on February 5, 1965, in which Stuckenberg alone applied for and received a payout order for part of the deposit.[1] A check for $13,825.00 was issued to Stuckenberg as payee and withdrawn from the court registry on February 13, 1965.[2] Three days later, on February 16th, Southern was notified of the commissioners' award.

As the respondent—State Highway Commission noted in its brief, the payout order issued by the trial court was an "irregularity" under the law in effect on February 5, 1965. The trial court[3] should not have permitted the commissioners' award to be withdrawn solely by Stuckenberg because rival claims, Stuckenberg's and Southern's, existed as to the award. *State ex rel. State Highway Commission v. Mahon*, 350 S.W.2d 111, 114 (Mo.App.1961). Indeed, if the payout order had directed payment of the commissioners' award to both Stuckenberg *and* Southern, the condemnor would have a clear claim against Southern for any reductions in the condemnation award, and much of the litigation in the case could have been averted.

The transactions between Stuckenberg and Southern on March 3, 1965, form the core of the controversy between Southern and the State Highway Commission. On this date, Stuckenberg deposited the award check for $13,825.00 in Stuckenberg's checking account at Southern. The check was endorsed with a stamp reading:

Pay to the order of

Southern Commercial & Savings Bank

R. W. Stuckenberg Co.

1. The court retained $675.00 for taxes on the condemned property.

2. On June 10, 1966, the court ordered that the remaining $675.00 of the deposit be paid to Stuckenberg. On June 13, 1966, a check for

this sum was issued to Stuckenberg and was thereafter deposited at Southside National Bank.

3. The trial judge here was not the trial judge who had issued the payout order.

Thereafter, $14,059.77 was withdrawn from Stuckenberg's checking account at Southern and was applied to reduce a loan made by Southern to Edward J. Diehl, a straw party for Stuckenberg. This loan was unrelated to the condemnation proceedings.

The exceptions to the commissioners' award came to trial on March 15, 1971. Prior to this date, Stuckenberg had gone through bankruptcy and out of business. However, Southern entered an appearance. A jury found that the value of the property condemned was $8,900.00. The court entered judgment against the defendants, one of whom was Southern, for the difference between the commissioners' and the jury's valuation, $5,600.00.

Southern appealed the judgment. In the prior appeal, we affirmed the jury verdict which valued the property condemned at $8,900.00. However, we reversed and remanded that part of the judgment imposing liability on Southern for $5,600.00. We ordered a retrial to determine "the amount of the award, if any, paid to or received by defendant bank and recovery, if any, limited to the percentage established by that payment." *State ex rel. State Highway Commission v. Thelnor, Inc.*, 485 S.W.2d 443, 446 (Mo.App.1972).

In proceedings before the trial court, both parties moved the court to grant summary judgment in their favor. On October 28, 1974, the trial court entered a summary judgment in favor of the State Highway Commission against Southern for $5,600.00 together with interest thereon at 6% per annum from February 5, 1966, the date on which Stuckenberg obtained the payout order. Southern has again appealed.

The question presented by this appeal is whether the trial court complied with the mandate of *State ex rel. State Highway Commission v. Thelnor, supra,* by entering summary judgment against Southern. We note that Southern filed no affidavits or other verified denials in opposition to the State Highway Commission's motion for summary judgment. Consequently, affidavits and exhibits filed by the State High-

way Commission are deemed admitted. *Sample's Estate v. Travelers Indemnity Co.*, 492 S.W.2d 829, 833 (Mo.1973). No genuine issue of material fact is in dispute in this appeal. However, we must still determine whether the State Highway Commission is entitled to judgment as a matter of law. *See Hall v. Hall*, 506 S.W.2d 42, 44 (Mo.App. 1974). Review of a summary judgment is the equivalent of review of court tried or equity cases. We are obligated to determine whether the summary judgment is supported by sufficient evidence and, if necessary, to enter such judgment as the trial court ought to have given. *Swink v. Swink*, 367 S.W.2d 575, 578 (Mo.1963); *Title Insurance Corp. of St. Louis v. U. S.*, 432 S.W.2d 787, 790 (Mo.App.1968).

■ Appellant's first argument is that no portion of the commissioners' award was paid to or received by Southern, therefore Southern is not obligated to return any portion of the $5,600.00 difference between the commissioners' and the jury's award. We agree with this contention.

Clearly, none of the commissioners' award was *paid* to Southern. Stuckenberg alone requested the payout order, and a check in which Stuckenberg was named as sole payee was issued by and withdrawn from the court before Southern was notified of the commissioners' award.

The question in dispute in this case is whether Southern *received* any of the commissioners' award. Thus, we must determine whether any portion of the award paid to Stuckenberg can be traced to Southern. We find that Stuckenberg deposited its award check as a general deposit for collection and hold that any payment made to Southern from Stuckenberg's account lost its character as the condemnation award.

■ Stuckenberg deposited its award check with the endorsement "Pay to the order of Southern Commercial & Savings Bank." The endorsement was not restricted by words indicating that the check was deposited for collection only. The State Highway Commission argues that the en-

dorsement employed by Stuckenberg specially endorsed the award check to Southern which became the new owner of the check. We disagree. Under the law in effect on the date the award check was deposited, Southern took the check as Stuckenberg's agent for collection. Section 402.050 RSMo 1959 provides that, except as to subsequent holders of the item a bank takes an item for collection even though the item is endorsed by the depositor by special endorsement.[4] As a general rule, therefore, if a bank takes a check for collection and credits the depositor's account when settlement of the check becomes final, the depository bank does not receive the check as owner. If Southern merely collected the check and credited Stuckenberg's account when settlement became final, no argument could be made that Southern received the award check.

However, the State Highway Commission argues that, because Stuckenberg withdrew money from its checking account and reduced a loan owed to Southern on the same day the award check was deposited, the bank received the award. The award could be traced to Southern if Stuckenberg withdrew its $13,825.00 award and paid this sum to Southern to reduce the loan secured by the deed of trust on the condemned property, but this was not the action taken by Stuckenberg. Stuckenberg violated the terms of the deed of trust and did not pay the condemnation award to Southern as the mortgagee of the condemned property. Instead, Stuckenberg withdrew $14,059.77 from his checking account and reduced another, independent debt held by Southern. Given these facts, Southern did not receive the commissioners' award under the agreement with the mortgagor-condemnee. The commissioners' award can not be traced to Southern by virtue of payment under the terms of Southern's deed of trust on the condemned property.

Absent payment of the commissioners' award under the terms of the deed of trust, we are unable to trace the award through Stuckenberg's checking account to Southern. It is not disputed that Stuckenberg paid $14,059.77 to Southern shortly after Stuckenberg deposited the award, but we can not characterize the payment as a payment of the award. When Stuckenberg deposited the award check as a general deposit,[5] the award was commingled with Stuckenberg's other funds on deposit and lost its character as a condemnation award. See In re Home Trust Co. of Fulton, 69 S.W.2d 312, 315–16, (Mo.App.1934) aff'd, 336 Mo. 239, 78 S.W.2d 445 (1934). The stamped endorsement on the award check did not indicate that the check was specially endorsed to Southern as mortgagee nor was the check personally presented to Southern as the mortgagee. Stuckenberg handled the check as it would handle any general deposit, without indication that the fund was to be segregated. Stuckenberg merely deposited the award check and another check in its checking account and then treated the fund as its own by withdrawing $14,059.77 to reduce a debt unrelated to the condemnation proceedings.

A bank is not responsible to third parties whose property is misappropriated by the bank's depositor when the depositor makes a general deposit of the misappropriated fund and thereafter withdraws the fund. Leuzinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 396 S.W.2d 570, 579 (Mo.banc 1965). We do not believe the result should be otherwise merely because the depositor pays the withdrawn fund to a bank which acted as the depository bank. Stuckenberg could have made a general

---

4. This case is not governed by the Uniform Commercial Code. The award check was deposited March 3, 1965, and the U.C.C. became effective on July 1, 1965. However, the U.C.C. provides that, regardless of the form of endorsement used, a depository bank takes an item for collection only, unless a contrary intent appears. § 400.4–201(1) RSMo 1969, Missouri Code Comment (1).

5. See Cockrell v. Moberly, 85 S.W.2d 185, 188–89 (Mo.App.1935) which notes the presumption in favor of finding a general deposit and indicates that, notwithstanding extrinsic evidence that a deposit is made for a special purpose, a deposit is general absent evidence that the deposit itself is made as a special deposit.

deposit of the award check at some other bank besides Southern. Indeed, Stuckenberg did deposit its second award check for $675.00 at a different bank. Had Stuckenberg deposited the award check in a checking account at a different bank in the same manner in which it deposited the check at Southern, neither the depository bank nor Southern, as recipient of a fund withdrawn from the other checking account, would be liable to third parties defrauded thereby. We see no reason to hold Southern liable on the sole ground that Stuckenberg chose to use Southern as its depository bank, a purely fortuitous circumstance.

 Assuming arguendo that Southern had exercised its right of setoff against Stuckenberg's checking account in order to reduce the loan not secured by the condemned property, we believe that Stuckenberg's treatment of the award check as a general deposit would prohibit tracing the award to Southern. Under most circumstances, a bank may apply its customer's deposits to reduce the customer's indebtedness to the bank as it becomes due. This right grows out of the debtor-creditor relationship between a bank and its customer. *Adelstein v. Jefferson Bank and Trust Co.*, 377 S.W.2d 247, 251 (Mo.1964). The bank's right of setoff is not terminated upon showing that the depositor wrongfully obtained the fund deposited. *Crider Bros. Commission Co. v. Farmers' National Bank of Ludlow*, 183 S.W. 648 (Mo.App.1916). In fact, the bank loses its right of setoff only if the bank has notice that a debtor-creditor relationship has not arisen by virtue of a deposit. Such notice exists if: (1) the depositor notifies the bank that the fund deposited belongs to a third party and that the bank is to pay the fund to the rightful owner, *Crider Bros., supra* ; (2) the deposit is specially endorsed to a third party, *Craig v. Bank of Granby*, 210 Mo.App. 334, 238 S.W. 507 (1922); or (3) the bank knows that a fund is deposited by a fiduciary in trust for the benefit of a third party. *Cassel v. Mercantile Trust Co.*, 393 S.W.2d 433 (Mo. 1965). So long as the bank does not have knowledge that the fund deposited is not a general deposit, the bank can exercise its right of setoff. In the case at bar, the transcript contains no evidence indicating that the bank knew that Stuckenberg's deposit of the award check was not a general deposit. As pointed out, Stuckenberg handled the award check as one would handle any general deposit. Stuckenberg took no action to indicate to Southern that the award check was to be segregated for a special purpose or that the check belonged to a third party. Further, Stuckenberg did not deposit the condemnation award in trust. Parties to a condemnation proceeding are in a debtor-creditor, not a fiduciary, relationship. *State ex rel. State Highway Commission v. Harris*, 417 S.W.2d 29, 32 (Mo.App.1967). In summary, once Stuckenberg had made a general deposit of the award check, the award could be traced no further absent knowledge on the part of the bank that the deposit was not made as a general deposit. Southern had no such knowledge.

Since we have determined that Southern received none of the commissioners' award, we need not reach the further issues raised on this appeal regarding apportionment of the refund owed the condemnor or interest due on the refund.

The summary judgment entered against Southern is not supported by sufficient evidence and is reversed. All material facts were before the trial court, and Southern was entitled to summary judgment in its favor. We order the trial court to enter judgment in accordance with this opinion.

CLEMENS, P. J., and STEWART, J., concur.